# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KHENN P. KROUCH,<br><br>        Plaintiff,<br><br>  vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>        Defendant. | 1:11cv01599 DLB<br><br>ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |

## BACKGROUND

Plaintiff Khenn P. Krouch ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed his application on May 28, 2009, alleging disability since April 20, 2009, due to diabetes, high blood pressure, high cholesterol, stress disorder, headaches, swollen legs, low back pain and problems sleeping. AR 133-136, 150-157. After the application was denied

initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 90, 91.  On September 23, 2010, ALJ Phillip E. Callis held a hearing in Stockton, California.  AR 42-78.  He issued a decision denying benefits on October 7, 2010.  AR 24-37.  On October 14, 2011, the Appeals Council denied review.  AR 1-7.

<u>Hearing Testimony</u>

ALJ Callis held a hearing on September 23, 2010, in Stockton, California.  Plaintiff appeared with his attorney, Langley Kreuze.  Vocational expert ("VE") Michael Stinton also appeared and testified.  AR 42.

Plaintiff testified that he was 48 years old at the time of the hearing.  He finished the third grade in Cambodia and can read and write a little English.  He said he could not really read a newspaper, however.  He also reads and writes a little in Cambodian.  AR 49-50.

Plaintiff lived in a house with his wife and another person.  He has adult children but could not remember how old they were.  AR 51.  Plaintiff's wife does not work and his daughter pays his rent.  AR 51.

Plaintiff usually gets up around 6:00 a.m. and is able to wash himself or take a shower. His wife prepares his meals.  During the day, he watches television in Cambodian, though he sometimes watches English shows.  AR 52-53.  He works in the garden sometimes and enjoys planting.  AR 53-54.  He goes to the Cambodian Temple with his wife once a month, although he doesn't talk to people much when he's there.  AR 54.  Plaintiff goes to the store with his wife once a week, but he sometimes sits in the car because he gets scared around a lot of people.  AR 55.  His wife takes the groceries from the cart to the car, and then from the car to the house.  AR 56.  Plaintiff can help with the "little light" ones.  AR 57.  He and his wife also visit their children about once a month.  AR 57.

Plaintiff last worked in 1988 in Utah, where he built cement walls. AR 57-58. He stopped working because he had an ulcer. AR 58. He moved to California shortly thereafter and looked for work, but no one was hiring. AR 59.

Plaintiff explained that he could not work because he was sick, and when asked for specifics, he stated, "my back, and my hand, and my neck." He also explained that his feet "look like ants are crawling on the bottom." AR 61. He has talked to the doctor about these things and the doctor told him that they are from his diabetes. AR 61.

When questioned by his attorney, Plaintiff explained that in the past, he couldn't see a doctor because he didn't have any money. AR 62. A friend helped him fill out forms because he cannot read or write. AR 62-63. Plaintiff also takes a lot of medication, which causes him to feel sick to his stomach 3 or 4 times a day. He often feels sick to his stomach even when he doesn't take his medication. His medications also cause dizziness 3 or 4 times a day and constant sleepiness AR 62-63. Plaintiff has about 4 bad days a week when he's so angry and nervous that he doesn't know what happened. AR 63-64. He has short term memory problems every day and always has difficulty concentrating. AR 64. Plaintiff cannot watch an entire television show without getting dizzy. AR 65. Plaintiff is depressed, sad and lacks energy. He also has pain. AR 66.

For the first hypothetical, the ALJ asked the VE to assume a person with Plaintiff's age, education and experience who could perform medium, unskilled work. The VE indicated that this person could perform the positions of laundry worker and cook helper. Plaintiff's inability to read a list and his borderline illiteracy would prevent him from performing other medium positions. AR 71-72. At the light level, Plaintiff could perform the positions of sandwich board carrier, hand presser and packing line worker. R 73.

If a preclusion from working around moving machinery and unprotected heights was added, it would eliminate the positions of packing line worker and laundry worker. AR 74.

The VE also noted that the identified positions have limited public contact. AR 75.

If this person could not perform 40 hours a week or 8 hours day, there would be no positions available. AR 75. Similarly, if this person was absent 3 or more times per month due to illness, there would be no positions available. AR 75.

When questioned by Plaintiff's attorney, the VE explained that the identified positions required adequate pacing. If a marked limitation in concentration, persistence or pace was added, there would be an erosion of 20 to 50 percent. AR 76.

If this person could not be around people, the sandwich board carrier position would not be available. AR 77.

Medical Record[1]

On June 14, 2007, Plaintiff was seen by Philip M. Cushman, Ph.D., for psychological testing. Plaintiff's affect was rather flat and he appeared to be mild to moderately anxious. He reported his appetite as light and stated that he doesn't sleep much. Plaintiff reported no prior psychiatric treatment. Testing revealed that Plaintiff's intellectual functioning was in the high end of the moderate mentally deficient range, and suggested significant problems with attention, concentration, and "even possibly effort." The Test of Memory Malingering suggested that Plaintiff was not putting forth much effort during testing and "in some ways, was hoping to appear more impaired than he actually is." AR 302-306.

Dr. Cushman diagnosed adjustment disorder with mixed anxiety and depressed mood and borderline intellectual functioning. He did not appear capable of performing detailed and complex tasks, but could perform some simple and repetitive tasks. Plaintiff may have difficulties with regular attendance and consistent participation based on complaints of weakness and malaise secondary to his diabetes and dysphoria. Assuming his diabetic condition was under control, Dr. Cushman opined that Plaintiff could "work up to a level where he is working full

---

[1] Plaintiff's arguments relate only to his mental impairments and the record will therefore be summarized accordingly.

time." Special supervision appeared to be needed only in the area of language and cultural differences. Plaintiff could follow simple verbal instructions from supervisors, but not complex instructions. He could get along with supervisors, co-workers and the general public and could deal with usual stressors in the work environment. Plaintiff did not appear cognitively capable of managing his own funds during the examination, but Dr. Cushman "suspected he is capable of doing so." AR 306-307.

From August 2007 through June 2010, Plaintiff received treatment from Maximo A. Parayno, Jr., M.D., for post-traumatic stress disorder ("PTSD") and depression. AR 284-301. In August 2007, Plaintiff was alert and oriented, with coherent thought, blunted effect and depressed mood. Recent memory, concentration, attention, judgment and insight were poor. Plaintiff also reported poor sleep and appetite. He was diagnosed with PTSD and major depressive disorder, recurrent, severe, without psychotic features. Plaintiff was given samples of medication because he could not buy prescriptions. AR 285.

In November 2007, Dr. Parayno noted that Plaintiff was suicidal, with no intent or plan. AR 287.

Dr. Parayno's notes from visits in 2008 revealed continued diagnoses of PTSD and recurrent major depressive disorder. Plaintiff was generally alert and oriented to time, person, place and situation, and had a blunted affect and depressed mood. Memory, concentration and judgment were generally poor. Plaintiff's sleep, appetite and energy level were also poor. AR 288-292.

In February and May 2009, Dr. Parayno indicated that Plaintiff was alert and oriented to time, person, place and situation, and had a blunted affect and depressed mood. Plaintiff was hopeless and having 3 to 6 nightmares a week. Memory, concentration and judgment were generally poor. Plaintiff's sleep, appetite and energy level were also poor. AR 293, 294

On August 28, 2009, Plaintiff saw Roxanne Morse, Ph.D. for a consultive psychological evaluation.  He complained of diabetes, swollen legs, lower back and shoulder pain, neck stiffness, headaches, depression and memory loss.  Plaintiff reported that he was diagnosed with depression in 2007 and was treated with medication by psychiatrist Dr. Parayno.  Plaintiff reported that he sleeps for 8 hours a night with medication, watches television for 6 to 8 hours a day and suffers from auditory and visual hallucinations.  He reported that his appetite was intact. AR 235-237.

During the examination, Plaintiff did not speak English but was able to follow instructions and 2-step commands.  During the testing process, Dr. Morse noted that he "showed little motivation and displayed inadequate effort and persistence."  AR 237.  On mental status examination, Plaintiff displayed adequate attention and concentration for conversation and his memory for recent, immediate and remove events appeared grossly intact.  His fund of knowledge was limited, as was his ability to perform mathematical calculations in his head. Plaintiff was able to answer questions requiring common sense but had mild difficulty answering questions requiring abstract reasoning.  AR 238.  Judgment and insight were fair.  His mood was mildly depressed and his affect was commensurate with his mood.  There was no evidence of hallucinations, delusions or other thought disorder.  AR 238.

Dr. Morse conducted a variety of tests and concluded that the tests were not an accurate representation of Plaintiff's participation and suggested malingering.  His scores indicated that he was not putting forth his best effort and was deliberately misrepresenting his cognitive abilities.  Dr. Morse believed that Plaintiff's cognitive ability was at least within the low average range, and it is possible Plaintiff had some underlying cognitive difficulties.  However, it was not possible to discern the nature or extent of any possible cognitive problems due to decreased effort and motivation.  Dr. Morse noted that according to testing, Plaintiff was malingering, especially with regard to his psychosis.  His allegations were unfounded and grossly

exaggerated. Although Plaintiff may have some valid psychiatric symptoms, the possibility of an accurate diagnosis was unlikely. AR 238.

Dr. Morse diagnosed malingering, cognitive, malingering, psychiatric, and personality disorder, not otherwise specified. During the evaluation, Plaintiff was able to understand, remember and carryout simple, detailed and complex instructions, and maintain attention, concentration, persistence and pace. He was able to endure the stress of the interview and testing process, and was able to interact appropriately with the examiner. His ability to interact with the public, supervisors and coworkers appears to be adequate. AR 238-239.

On September 23, 2009, State Agency physician N. Kravatz, Psy.D., completed a Psychiatric Review Technique form. In rating the functional limitations, Dr. Kravatz opined that Plaintiff had mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace. Dr. Kravatz explained that Plaintiff had an intact mental status examination and that his tests were not considered to be accurate representations of his cognitive functioning because of poor effort. The evidence suggested that Plaintiff could carry out simple instructions and sustain attention and concentration over a 40 hour workweek. Plaintiff could relate to supervisors but would need limited public contact. AR 246-256.

Also on September 23, 2009, Dr. Kravatz completed a Mental Residual Functional Capacity Assessment. She opined that Plaintiff was moderately limited in his ability to understand, remember and carry out detailed instructions and in his ability to interact with the general public. AR 257-259.

Plaintiff returned to Dr. Parayno in January and April 2010, and his mental status examination remained the same. Plaintiff was given samples of medication. AR 296, 297.

During Dr. Parayno's examination on June 26, 2010, Plaintiff was alert and oriented to time, person, place and situation. He had a blunted affect and depressed mood. Plaintiff was

having nightmares 5 times per week. Memory, concentration and judgment were poor. Plaintiff's sleep and appetite were poor and his energy level was "okay." He was diagnosed with PTSD and major depressive disorder, recurrent, severe, without psychotic features. AR 298.

On June 27, 2010, Dr. Parayno completed a Mental Impairment Questionnaire. He stated that he first saw Plaintiff in August 2007 and has seen him every 6 to 8 weeks since. Plaintiff was diagnosed with chronic PTSD and chronic, recurrent, severe major depressive disorder without psychotic features. His response to treatment has been fair. Plaintiff was taking numerous medications and side effects included dizziness, drowsiness, gastric upset and low energy. Dr. Parayno's clinical findings included depression, recurrent nightmares, low energy, feeling helpless, poor concentration and memory. Plaintiff's prognosis was fair to poor, as he could not afford to pay for expensive medications which would be more effective. Dr. Parayno opined that Plaintiff had marked restrictions in activities of daily living, moderate difficulties maintaining social functioning and marked deficiencies of concentration, persistence or pace. He also noted that Plaintiff is completely unable to function independently outside of his own home and he would be absent more than four days per month. AR 278-283.

Plaintiff returned to Dr. Parayno on September 28, 2010. He was alert and oriented to time, person, place and situation, and had a blunted affect and depressed mood. Plaintiff was having 4 to 5 nightmares a week. Memory, concentration and judgment were poor. Plaintiff's sleep and appetite were poor, but his energy level was good. AR 301.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairment of diabetes mellitus. AR 30. He retained the residual functional capacity ("RFC") to perform unskilled medium work with limited public contact. AR 33. The ALJ determined that Plaintiff had no past relevant work but could perform jobs that existed in significant numbers in the national economy. AR 36. Specifically, he could perform positions such as laundry worker and cook helper. AR 37.

## **SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" (diabetes mellitus) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) did not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) has no past relevant work; but (5) could perform a significant number of jobs in the national economy. AR 33-37.

Here, Plaintiff argues that the ALJ (1) erred in discrediting the opinion of Dr. Parayno, and (2) erred in applying the presumption of continuing non-disability.

## DISCUSSION

A.   Dr. Parayno's Opinion

Plaintiff first argues that the ALJ failed to set forth specific and legitimate reasons for rejecting Dr. Parayno's June 27, 2010, opinion.

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995). Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)). This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th

Cir.1989).  The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct.  *Embrey v. Bowen*, 849 F.2d 418, 421 22 (9th Cir.1988).  Therefore, a treating physician's opinion must be given controlling weight if it is well-supported and not inconsistent with the other substantial evidence in the record.  *Lingenfelter v. Astrue*, 504 F.3d 1028 (9th Cir. 2007).

In *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit reiterated and expounded upon its position regarding the ALJ's acceptance of the opinion an examining physician over that of a treating physician.  "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'"  *Orn*, 495 F.3d at 632; *Murray*, 722 F.2d at 501-502.  "By contrast, when an examining physician provides 'independent clinical findings that differ from the findings of the treating physicians, such findings are substantial evidence.'"  *Orn*, 496 F.3d at 632; *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir.1985).  Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, *see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir.1985), or (2) findings based on objective medical tests that the treating physician has not herself considered, *see Andrews*, 53 F.3d at 1041.

If a treating physician's opinion is not giving controlling weight because it is not well supported or because it is inconsistent with other substantial evidence in the record, the ALJ is instructed by Section 404.1527(d)(2) to consider the factors listed in Section 404.1527(d)(2) (6) in determining what weight to accord the opinion of the treating physician.  Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. 20 C.F.R. § 404.1527(d)(2)(i) (ii).  Other factors include the supportablility of the opinion, consistency with the record as a whole, the specialization of the

11

physician, and the extent to which the physician is familiar with disability programs and evidentiary requirements. 20 C.F.R. § 404.1527(d)(3)-(6). Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is "still entitled to deference." SSR 96 2p; *Orn*, 495 F.3d at 632-633. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p; *Orn*, 495 F.3d at 633.

In determining that Plaintiff could perform medium, unskilled work with limited public contact, the ALJ rejected Dr. Parayno's restrictive opinion in favor of the opinions of the Consultive Examiner and State Agency physician. AR 30-31. Consultive Examiner Dr. Morse concluded that Plaintiff could understand, remember and carryout simple, detailed and complex instructions, maintain attention, concentration, persistence and pace, and adequately interact with the public, supervisors and coworkers. AR 238-239. State Agency physician Dr. Kravatz found that Plaintiff was moderately limited in his ability to understand, remember and carry out detailed instructions and in his ability to interact with the general public. AR 257-259.

The ALJ set out the treatment records of Dr. Parayno in detail, as well as the examination by Dr. Morse and the review by Dr. Kravatz. The ALJ first explained that Dr. Parayno regularly saw Plaintiff for his depression, "however there was no significant worsening of the claimant's depression related symptoms noted in the treatment records and no other referrals to specialists or counselors." AR 30. Indeed, Dr. Parayno's treatment began in 2007 and overlapped with the examination by Dr. Morse and the review by Dr. Kravatz. Dr. Parayno's notes and opinion stood in stark contrast to Dr. Morse's findings, which, as the ALJ noted, included decreased effort and questionable motivation, and the ALJ was entitled to resolve this conflict.[2] AR 30-31. As Dr.

---

[2] In his opposition, Defendant argues that the ALJ made an uncontested finding that Plaintiff was malingering in discounting Dr. Parayno's opinion. Although the ALJ noted the instances where Dr. Morse questioned Plaintiff's effort and credibility, the ALJ did not make a specific finding that Plaintiff was malingering. Therefore, as it was not a ground specifically cited by the ALJ, the Court will not discuss it further. A reviewing court cannot affirm an ALJ's decision denying benefits on a ground not invoked by the Commissioner. S*tout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006).

Parayno's treatment notes did not indicate any worsening of symptoms, the ALJ properly determined that his notes did not support such drastic restrictions in light of the other evidence. AR 30. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (A lack of supporting clinical findings is a valid reason for rejecting a treating physician's opinion). Plaintiff argues that the ALJ "admitted that the medications were adjusted" and therefore Plaintiff's condition could not have been stable. Regardless of the state of his medications, however, the record of his symptoms remained constant.

      The ALJ next explained that the June 27, 2010, opinion was set forth on a "preprinted form which consists of boxes for the physician to check," without "specific statements or explanations from Dr. Parayno to support his opinion." AR 30. The June 27, 2010, opinion was set forth on a preprinted form, with both check-the-box portions and space for explanations, and submitted to the ALJ by Plaintiff's counsel just prior to the hearing. Although there were areas for Dr. Parayno to explain his opinions, the explanations he offered did not shed any light on why his restrictions were so drastic. For example, he lists Plaintiff's medications and side effects, sets forth general clinical findings, lists his response to treatment as fair and lists his prognosis as fair to poor. Dr. Parayno also notes that he *has not determined* Plaintiff's IQ or intellectual functioning and cites "research" in stating that Plaintiff's depression increases his experience of pain. Dr. Parayno also indicates that he would suggest a chemistry panel and psychological evaluation to *fully assess* Plaintiff's symptoms and limitations. AR 279-283.

      The ALJ also finds that the opinion was inconsistent with the treatment records. For example, Dr. Parayno checks the box indicating that Plaintiff was disoriented to time and place, yet every treatment note from 2007 through 2010 finds that Plaintiff was oriented to time, person, place and situation. AR 280, 285, 288-294, 298, 301. Plaintiff lists the portions of Dr. Parayno's treatment notes that he contends suggests a "close match" to the symptoms listed in the questionnaire, but Plaintiff will not prevail simply because there is evidence supporting his

position. *Richardson v. Perales*, 402 U.S. at 399; *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Rather, the decision of the Commissioner to deny benefits will be overturned only if it is not supported by substantial evidence or is based on legal error. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). A brief and conclusionary form opinion which lacks supporting clinical findings is a legitimate reason to reject a treating physician's conclusion. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Insofar as the ALJ found that Plaintiff was not referred to a specialist or counselor, and mistakenly noted that Dr. Parayno was not a psychiatrist, any mistake was harmless as it would not have changed the ultimate finding of nondisability. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 20212).

Therefore, the Court finds that the ALJ's rejection of Dr. Parayno's opinion was supported by substantial evidence and free of legal error. In light of the contradictory opinions from Dr. Morse, Dr. Kravatz and Dr. Cushman,[3] the ALJ was entitled to reject Dr. Parayno's opinion and set forth proper reasons for doing so. The courts do not have the responsibility for weighing the evidence and resolving conflicts therein, that responsibility belongs to the Commissioner alone. *Richardson v. Perales*, 402 U.S. 389, 399 (1971).

B.   <u>Presumption of Continuing Non-disability</u>

Plaintiff believes that the ALJ erred in applying the presumption of continuing non-disability. Specifically, he argues that the ALJ incorrectly concluded that there was no evidence of changed circumstances with regard to Plaintiff's depression since the prior decision in April 2009.

The principals of res judicata apply to administrative decisions. In order to overcome the presumption of continuing non-disability arising from a prior ALJ's finding of non-disability, plaintiff must prove "changed circumstances" indicating a greater disability. *Chavez v. Bowen*,

---

[3] The ALJ stated that he read and considered Dr. Cushman's June 14, 2007, opinion. AR 32.

844 F.2d 691 (9th Cir. 1988).  A changed circumstance includes a change in the claimant's age category under 20 CFR 404.1563 or 416.963, an increase in the severity of the claimant's impairment(s), the alleged existence of an impairment(s) not previously considered, or a change in the criteria for determining disability.  Acquiescence Ruling 97-4(9).

In the prior decision dated April 14, 2009, ALJ Thompson determined that Plaintiff's diabetes mellitus was a severe impairment.  As to Plaintiff's depression, he determined that the "medical evidence of record supports the medical disposition of 'not-severe' and/or malingering."  AR 84-85.  ALJ Thompson found that Plaintiff retained the RFC for medium, unskilled work with limited public contact.  AR 86.

In the most recent decision, ALJ Callis determined that there was "no evidence of any changed circumstances in the claimant's depression since the prior decision in April 2009."  AR 32.  He continued, "[i]n light of the evidence submitted concerning the claimant's depression discussed above, the undersigned finds that the claimant's depression is non-severe."  AR 32.

Plaintiff first argues that he established changed circumstances because Dr. Parayno's progress notes and functional assessment reflects that his condition has declined.  However, for the reasons discussed above, the evidence presented to ALJ Callis did not suggest that Plaintiff's depression had worsened.  The ALJ adopted the opinions of Dr. Morse and Dr. Kravatz, which were consistent with the opinion of Dr. Cushman submitted to the prior ALJ.  AR 31-32.

Plaintiff also argues that he established changed circumstances because his PTSD was a new diagnosis.  Plaintiff correctly notes that it would be inappropriate to apply the presumption where a subsequent application raises new impairments.  However, even if this could be considered *material* evidence given the ALJ's proper rejection of Dr. Parayno's opinion, the ALJ based his determination on his own 5-step finding and did not rest on any presumptions.  In other words, the ALJ weighed all medical evidence that was before him and formulated an RFC independent of the prior decision.  Any error was therefore harmless.  *See Batson v. Comm'r Soc.*

*Sec.*, 359 F.3d 1190, 1197 (9th Cir.2004) (an error is harmless where it does not negate the validity of the ALJ's ultimate conclusion).

To the extent Plaintiff attempts to point out errors in the prior disposition, *Chavez* provides no authority for doing so.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  The Court further finds that any errors were harmless.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Khenn P.Krouch.

IT IS SO ORDERED.

Dated:   **October 24, 2012**                    /s/ *Dennis L. Beck*
                                                UNITED STATES MAGISTRATE JUDGE